# State of Vermont v. William Davis

[584 A.2d 1146]

No. 90-282

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed November 30, 1990

*William Sorrell,* Chittenden County State's Attorney, and *Cindy J. Maguire,* Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Robert Andres,* Burlington, for Defendant-Appellant.

**Morse, J.** Defendant appeals from a denial of his motion for sentence reconsideration. We are called upon to review the propriety of the trial judge engaging in plea bargain discussions with the parties, suggesting a specific plea bargain, which included a set sentence in exchange for a guilty plea, and imposing a larger sentence after defendant rejected the proposed agreement and was found guilty by a jury. Under the facts of this case, we find no error and affirm.

■ The State has moved to dismiss the appeal because defendant did not appeal the judgment of conviction. We deny the motion because V.R.Cr.P. 35(a) permits a challenge that a sentence was "imposed in an illegal manner."

During trial on a charge of DUI, death resulting, 23 V.S.A. §§ 1201(a)(2), 1210(e) (maximum penalty fifteen years), the trial judge initiated a discussion about a plea agreement. This discussion lasted about five minutes and occurred off the record, but its substance was placed on the record immediately after it concluded. The on-record description of the off-record discussion went as follows:

> [Prosecutor]: It's my understanding at this point, after a discussion in chambers, that the Court has stated that it views this case as one [involving] a youth. . . . [The court] doesn't know all of the facts involved . . . but is viewing the case in somewhat of the neighborhood of a sentence . . . at this point that unless something changes in the Court's knowledge, a sentence of somewhere in the neighborhood of one to five years split with perhaps four months to serve is something that . . . the Court is at least considering as a possibility. Is that a fair—
>
> THE COURT: Yes.
>
> [Prosecutor]: And is that your understanding?
>
> [Defense Counsel]: It's my understanding from the things that I am hearing, that the Court is hearing, that would change its mind, is drug or alcohol abuse after the incident, or drug and alcohol related crimes after the incident.

THE COURT: Yes.

[Defense Counsel]: Let me talk to them.

The defense decided to take its chances with the jury and did not pursue the plea agreement. The jury returned a guilty verdict, and, after a presentencing investigation, defendant was sentenced to one to three years to serve.

## I.

Analogizing this case to one where a greater sentence after retrial—all other factors being relatively equal—is presumed vindictive, defendant maintains this case warrants a reversal and resentencing by another judge. See *State v. Percy*, — Vt. —, —, 595 A.2d 248, 255–56 (1990) (discussing the "presumption of vindictiveness" as it evolved in *North Carolina v. Pearce*, 395 U.S. 711 (1969), and in later United States Supreme Court cases). We conclude, however, that the analogy is inapt and that the presumption of vindictiveness does not arise when the sentencing judge has participated in plea bargain discussions that did not lead to an agreement.

 A plea-bargained sentence is based on a variety of factors in addition to those usually considered after an adjudication of guilt. For instance, the following factors are relevant to acceptance of a plea agreement:

(i) the defendant is genuinely contrite and has shown a willingness to assume responsibility for his or her conduct;

(ii) the concessions [as to charge or sentence] will make possible alternative correctional measures which are better adapted to achieving protective, deterrent, or other purposes of correctional treatment, or will prevent undue harm to the defendant from the form of conviction;

(iii) the defendant, by making public trial unnecessary, has demonstrated genuine consideration for the victims of his or her criminal activity, by desiring either to make restitution or to prevent unseemly public scrutiny or embarrassment to them; or

(iv) the defendant has given or offered cooperation when such cooperation has resulted or may result in the successful prosecution of other offenders engaged in equally serious or more serious criminal conduct.

Standards for Criminal Justice § 14-1.8 (2d ed. 1980). In most plea agreements, one or more of these factors will apply, with the result that plea-bargaining defendants as a class will receive more favorable treatment than those convicted at trial. *Id.*, commentary at 49. The commentary drafters conclude this result is not unfair because, by making these concessions, plea-bargaining defendants contribute to goals of criminal justice, *id.*, and thereby become more deserving of leniency from the system.

We cannot make a meaningful comparison between a plea-bargained sentence, based on complex practical and policy considerations, and the sentence the same judge would find acceptable after a fully litigated trial, including a presentence investigation and sentencing hearing. The two scenarios are too dissimilar.

In addition, as a practical matter, barring a court from giving a greater sentence after trial than one it merely suggested as part of a plea bargain would invite abuse of the plea-bargaining system: defendants could bargain for the best deal, then refuse to enter into the deal but still retain the benefit. Once a judge "committed" to a sentence, a defendant could take his or her chances with the jury knowing that no matter what information came out at trial, the defendant would risk no greater sentence. See *United States v. Carter*, 804 F.2d 508, 513–14 (9th Cir. 1986) ("If defendants could demand the same sentence after standing trial that was offered in exchange for a guilty plea, all incentives to plead guilty would disappear. Defendant would lose nothing by going to trial. The reality of plea bargaining is that '[o]nce the defendant elects to go to trial, all bets are off.'") (quoting *Frank v. Blackburn*, 646 F.2d 873, 887 (5th Cir. 1980)); see also *Mitchell v. State*, 521 So. 2d 185, 187–88 (Fla. Dist. Ct. App. 1988) (defendant who rejects a plea-bargained sentence assumes the risk of receiving a harsher sentence; a contrary rule would render all plea negotiations futile because a defendant could reject an offer yet still retain the benefit of the bargain).

■■ Ultimately, this scenario would work against defendants as a class because judges would be reluctant to participate in plea bargaining. Vermont is almost unique in allowing judges to participate in plea bargaining, taking a position different

from both the federal rule and from the ABA Standards because it has recognized that defendants derive benefits from judges' input. See Reporter's Notes to V.R.Cr.P. 11(e)(1). In difficult cases, where the parties are deadlocked, the judge may be able to help to fashion a compromise.

The Standards for Criminal Justice do contain a provision protecting defendants who decline plea bargains from vindictive sentencing. Under § 14-1.8(b):

> The court should not impose upon a defendant any sentence in excess of that which would be justified by any of the protective, deterrent, or other purposes of the criminal law because the defendant has chosen to require the prosecution to prove guilt at trial rather than to enter a plea of guilty or nolo contendere.

But the commentary to this section makes clear that the mere disparity between plea-bargained and post-trial sentences does not mandate a presumption of vindictiveness. Rather, for vindictiveness to be found "when the trial judge is involved with the plea bargaining, and a harsher sentence follows the breakdown in negotiations, the record must show that no improper weight was given the failure to plead guilty." *Mitchell,* 521 So. 2d at 188. Examples of vindictiveness toward defendants who exercise their right to trial include cases where judges have commented on the high cost of trials and on the defendant's insistence on exercising his or her right to a trial, see *United States v. Medina-Cervantes,* 690 F.2d 715, 716 (9th Cir. 1982), or on the defendant's unquestionable guilt and the consequent lack of necessity for a trial, see *United States v. Hutchings,* 757 F.2d 11, 13–14 (2d Cir.), *cert. denied,* 472 U.S. 1031 (1985). See also *In re Mandeville,* 144 Vt. 608, 609, 481 A.2d 1048, 1049 (1984) (judge violated canon on judicial impartiality by stating in a newspaper interview that defendants who plead guilty show repentance while those who go to trial do not; judge's statement had a chilling effect on defendants' exercising right to jury trial). Without such comments, vindictiveness will not be presumed. No such statements appear in the record here.

## II.

The fact that V.R.Cr.P. 11(e) (court may not take part in plea bargaining discussions unless proceedings are on the rec-

ord) was violated is of no moment here because the substance of the discussions admittedly was placed on the record and defendant has shown no prejudice. The purpose for requiring these discussions to be of record is to review claims that the court was prejudiced or exerted undue influence. This purpose was functionally satisfied in this case. See Reporter's Notes to V.R.Cr.P. 11(e)(1).

*Affirmed. Motion to dismiss appeal denied.*