NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 112

No. 2017-299

| State of Vermont | Supreme Court |
| --- | --- |
| | |
| | On Appeal from |
| v. | Superior Court, Rutland Unit, |
| | Criminal Division |
| | |
| Christopher P. Sullivan | June Term, 2018 |

Theresa S. DiMauro, J.

David Tartter, Special Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Rebecca Turner, Appellate Defender, Montpelier, for
  Defendant-Appellant.


PRESENT: Reiber, C.J., Robinson and Eaton, JJ., and Burgess, J. (Ret.) and Morris,
          Supr. J. (Ret.), Specially Assigned


¶ 1.    **REIBER, C.J.**  Defendant requests that the Court vacate his sentence and remand for resentencing with a different judge. This is defendant's second appeal following his convictions for operating a motor vehicle while under the influence of intoxicating liquor (DUI) with death resulting and for leaving the scene of a fatal accident. We affirm.

¶ 2.    In the first appeal, State v. Sullivan, 2017 VT 24, ¶¶ 2-4, 204 Vt. 328, 167 A.3d 876, we summarized the following facts:

> On April 10, 2013, defendant consumed six or seven alcoholic
> beverages between the hours of five and seven forty-five in the
> evening. At seven forty-five, defendant drove south on Strongs
> Avenue in Rutland at a speed of between twenty-two and thirty
> miles per hour. It was dusk, and a light rain was falling. Also at this

time, the victim, a seventy-one-year-old woman wearing a cream-colored coat and walking with the assistance of two canes, began crossing Strongs Avenue with a friend from east to west in front of the Palms Restaurant, having looked in both directions before starting across the street. The victim walked at an estimated pace of between one-and-one-half-to-three feet per second. She was not in a crosswalk and defendant's car came upon her before she was able to cross the road. Just before the car struck her, the victim's friend called out in warning and the victim turned and raised both of her canes. Without braking or swerving, defendant's car struck the victim in the travelled portion of Strongs Avenue. The victim was thrown onto the hood of defendant's vehicle and into the windshield before landing in the street. Defendant continued driving without slowing down. He later told police that he had no idea who or what he hit, that he panicked and was unsure what to do, and that he continued driving to the Hannaford's parking lot. When defendant got out of his vehicle he saw damage to the hood and a shattered windshield. His rear-view mirror was detached, and there were shards of glass on the passenger seat.

From the parking lot, defendant called his law partner, who informed him that an ambulance had arrived at the scene in front of the Palms Restaurant. In a subsequent phone call, defendant's partner informed him that the victim had been pronounced dead at the hospital as a result of blunt-force trauma to her torso. Defendant spoke to his law partner again later that night, as well as to defense counsel. He made no effort to contact the police that night. Defendant had planned to pick up his son, but instead called his son from the Hannaford's parking lot and told him, untruthfully, that he had been delayed by a work obligation.

The next day defendant went to the police station with his attorney to give a statement. He told police of his activities the preceding night, including the amount and time of his alcohol consumption. He also told police that he had been driving thirty miles per hour and did not see the victim in the street before the accident.

¶ 3. The State charged defendant with DUI with death resulting, in violation of 23 V.S.A. § 1201(a)(2) and § 1210(f)(1), which prescribes a maximum $10,000 fine and/or imprisonment for a minimum term of one year and a maximum of fifteen years. Id. § 1210(f)(1). The State also charged defendant with leaving the scene of a fatal accident, in violation of 23 V.S.A. § 1128(a) and (c). This crime carries a mandatory minimum term of imprisonment of one year and a maximum of fifteen years and/or a $3,000 fine. Id. § 1128(c).

2

¶ 4.     A jury found defendant guilty of both charges.  The trial judge sentenced defendant to two concurrent four- to ten-year terms.  Defendant appealed.  <u>Sullivan</u>, 2017 VT 24, ¶ 1.  We affirmed defendant's convictions but remanded for resentencing.  <u>Id</u>.  We held the trial court had "abused its discretion by not continuing the sentencing hearing to allow defendant to present the testimony of his expert witness."  <u>Id</u>.  On remand, the same trial judge held a resentencing hearing in August 2017.  After considering evidence from the first sentencing hearing and additional evidence, the trial judge reimposed two concurrent sentences of four to ten years, with credit for time served.

¶ 5.     Defendant's core challenge on appeal is that the trial court did not have discretion to impose that sentence.  He bases his challenge on two general arguments.  First, defendant argues that the record does not support the sentence.  More specifically, defendant contends (a) that the court did not have discretion to impose a minimum sentence above the statutory mandatory minimum absent a showing of aggravating factors; (b) to the extent the court's findings support aggravating factors, those findings are incorrect and insufficient to support the sentence; and (c) the court abused its discretion in dismissing defendant's mitigating evidence.  Second, defendant argues the trial judge's sentencing decision and process were driven by an impermissible personal animus against defendant.

## I.  The Sentencing Court's Discretion

¶ 6.     Because all the arguments in this case center on the trial court's discretion in imposing sentence, it is helpful to address at the outset the scope of a sentencing court's authority.  "Sentencing is solely the function of the trial judge . . . ."  <u>State v. Lumumba</u>, 2014 VT 85, ¶ 22, 197 Vt. 315, 104 A.3d 627.  The trial court's goal is to fashion an individualized sentence that is fair and just according to all the facts and circumstances of that unique case.  See <u>id</u>. ¶ 23 ("Vermont has adopted a situational sentencing scheme whereby the court tailors the punishment within the statutory range to fit the defendant in question.");  see also <u>Gall v. United States</u>, 552

U.S. 38, 52 (2007) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." (quotation omitted)).

¶ 7. Accordingly, it is appropriate for the sentencing court to consider a wide range of factors in determining a sentence. State v. Scott, 2013 VT 103, ¶ 20, 195 Vt. 330, 88 A.3d 1173. These factors include "the nature and circumstances of the crime, the history and character of the defendant, the need for treatment, and the risk to self, others, and the community at large presented by the defendant." 13 V.S.A. § 7030(a) (requiring sentencing court to consider these factors). They also include, among others, "[t]he defendant's background, his family, past conduct and his . . . propensities," State v. Ingerson, 2004 VT 36, ¶ 10, 176 Vt. 428, 852 A.2d 567, and the "defendant's refusal to accept how his actions harmed the victim," State v. Allen, 2010 VT 47, ¶ 14, 188 Vt. 559, 1 A.3d 1003 (mem.).

¶ 8. In keeping with the court's role in fashioning an appropriate, individualized sentence, the court's discretion in sentencing is broad. Lumumba, 2014 VT 85, ¶ 23 (recognizing that "[i]n giving trial judges wide discretion to fashion appropriate sentences," a court may "tailor[]" each sentence to the particular situation before it); Ingerson, 2004 VT 36, ¶ 10 (stating sentencing court "has broad discretion when imposing a sentence"). Of course, that "discretion is not absolute." State v. Neale, 145 Vt. 423, 436, 491 A.2d 1025, 1033 (1985). The court "may not rely upon improper or inaccurate data in reaching its sentencing decision." Id. (quotation omitted). Nor may a sentencing decision be "driven by personal bias or animus against the defendant." Ingerson, 2004 VT 36, ¶ 10. The court must "ground its decision on legitimate goals of criminal justice, including . . . punishment, prevention, rehabilitation, and deterrence." Allen, 2010 VT 47, ¶ 14.

4

¶ 9. Our review of a sentencing decision is therefore limited and deferential. Lumumba, 2014 VT 85, ¶ 22. We will not disturb the court's ruling unless there was an abuse of discretion. State v. Webster, 2017 VT 98, ¶ 45, __ Vt. __, 179 A.3d 149. Thus, "[w]e will affirm a sentence on appeal if it falls within statutory limits, and it was not derived from the court's reliance on improper or inaccurate information" or "driven by personal bias or animus against the defendant." Ingerson, 2004 VT 36, ¶ 10 (citation omitted). We will uphold the findings upon which the sentencing court relies "if they are supported by credible evidence, even where there may be substantial evidence in the record to the contrary." State v. Corliss, 168 Vt. 333, 341, 721 A.2d 438, 444 (1998).

## II. Whether the Record Supports the Sentence

¶ 10. We turn now to defendant's arguments that the record does not support the sentence. More specifically, defendant argues (a) that the court could not impose a minimum sentence above the statutory mandatory minimum absent a showing of aggravating factors; (b) to the extent the court's findings support aggravating factors, those findings are incorrect and insufficient to support the sentence; and (c) the court abused its discretion in dismissing defendant's mitigating evidence.

¶ 11. The court is not required to find any aggravating factors in imposing a minimum sentence greater than the statutory mandatory minimum. This issue was addressed in State v. Webster, 2017 VT 98. In that case, the defendant argued the court had abused its discretion in imposing an "unusually long" sentence for the crime of second-degree murder—the minimum sentence imposed was twice the statutory mandatory minimum—arguing that "the reasons supporting the court's sentencing decision are present" in every case for that crime. Id. ¶ 44; 13 V.S.A. § 2303(a)(2)(A) (setting twenty-year minimum imprisonment for second-degree murder). We recited the appropriate abuse-of-discretion standard, reviewed the trial court's consideration of the sentencing factors, and concluded the court did not err. Webster, 2017 VT 98, ¶¶ 45-47.

5

We acknowledged "the sentence was significant," but the record showed "proper consideration of the sentencing factors" and the defendant had "not shown that the trial judge relied on improper information" or "was motivated by any bias or improper motive." Id. ¶¶ 47-48. Moreover, we emphasized, "[e]ven if [the] defendant's contention that the factors relied on by the sentencing judge here would be present in every murder case, this would not amount to sentencing error." Id. ¶ 48.

¶ 12. In other words, the mandatory minimum imposed by the Legislature does not represent a presumptive minimum sentence. The mandatory minimum limits the trial judge's discretion in imposing a minimum sentence less than the mandatory minimum, but it does not limit the trial judge's discretion in imposing a minimum sentence greater than the mandatory minimum. The court is not required to find aggravating factors to impose a minimum sentence greater than the mandatory minimum. So long as the court imposes a sentence "within the statutory limits, [which] is not based upon improper or inaccurate information, and is not the result of personal animus or bias, it will be affirmed." Id. ¶ 45.

¶ 13. Next, we address defendant's contention that to the extent the court found aggravating factors, the findings were incorrect or not supported by the evidence. Again, the court did not and was not required to find aggravating factors. The court did and was required to consider many factors in sentencing and to base its sentencing decision on proper and accurate information. 13 V.S.A. § 7030(a); Ingerson, 2004 VT 36, ¶ 10.

¶ 14. Here the court relied on the facts underlying the crimes to determine the sentence. The court also considered additional facts, none of which defendant disputes: that instead of picking up a family member from work immediately afterward, as planned, he called and lied that he was detained by work; that he called his law partner several times and learned that a person was taken from the scene of the accident to the hospital and later died; and that defendant did not turn

6

himself in to the police until the following day, by which time there was no alcohol in his body.[1] These factors were all proper bases for the court's sentencing decision.

¶ 15. The court also relied on its findings that defendant failed to take responsibility for his crimes and that he posed a risk to the public. Defendant contests these findings. We will uphold the court's findings "if they are supported by credible evidence." Corliss, 168 Vt. at 341, 721 A.2d at 444. This is so "even where there may be substantial evidence in the record to the contrary." Id.

¶ 16. Here, while there is credible evidence to support defendant's contention that he did take responsibility and credible evidence that he was not a risk to others, this was ultimately not persuasive to the trial judge where there was also evidence to support the court's findings. The court relied on the Presentence Investigation Report (PSI), in which defendant stated that "[t]his tragedy has caused suffering and pain in others and for that I am so sorry." The court viewed this statement as externalizing the "tragedy" as an accident distinct from defendant's control and responsibility. Consistent with this view, the court observed that defendant had reported that he regularly drank two to three drinks per night, but that on the night of the accident, he drank six or seven drinks within two and one-half hours—an indication to the court that defendant did not have an adequate awareness of his own dangerous choices with alcohol. Bolstering the court's concern, defendant's expert witness stated that defendant's understanding of the "impact of alcohol" on defendant's actions was still "unfolding," and the expert's testimony on cross-examination indicated defendant saw "little need for changes in his behavior." The court did not credit defendant's statement of responsibility at the 2017 resentencing hearing, saying his

---

[1] The trial court noted that defendant reported to the police station at 1:00 p.m. the following day, seventeen hours after the accident. Defendant emphasizes that, in fact, he attempted to report to the police three hours earlier, at 10:00 a.m., but that the police told him to return later. As the alcohol would have dissipated by 10:00 a.m., as well, this distinction makes no difference in whether the evidence supports the court's findings.

acknowledgment came only after the previous sentencing and "with the benefit of knowing what he probably should have said before even if he didn't believe it then." As we explain below, the court was entitled to find defendant's statements not credible. Because the record shows credible evidence to support the findings, we hold the court did not err in making the findings or in basing its sentencing decision on them.[2]

¶ 17. Third, we consider defendant's claim that the court "summarily dismissed" defendant's mitigation evidence, abusing its discretion. The record indicates the trial court listened to and considered defendant's evidence and found it not credible. This the court was entitled to do. The sentencing court was the factfinder, and the factfinder "determine[s] the credibility of the witnesses and weigh[s] the persuasiveness of the evidence." Cabot v. Cabot, 166 Vt. 485, 497, 697 A.2d 644, 652 (1997) ("As the trier of fact, it was the province of the trial court to determine the credibility of the witnesses and weigh the persuasiveness of the evidence."); see also State v. Freeman, 2004 VT 56, ¶ 8, 177 Vt. 478, 857 A.2d 295 ("Given the inherent difficulty in evaluating demeanor, mannerisms, and tone of voice, in addition to the quality of testimony itself, we defer to the factfinder's determination of the credibility of the witness, and the persuasive effect of his testimony.").

¶ 18. Defendant suggests that a court may find an expert witness not credible only if there are defects in the expert witness's methodology or a basis to attack the witness's expertise, education, or ability to testify. This is not the case. A court is not required to credit an expert witness's opinion whenever the witness is qualified to testify as an expert. See Ferri v. Pyramid

---

[2] Defendant argues that because the State produced no additional evidence at the resentencing hearing, all the court had before it was uncontested mitigating evidence, and therefore reimposing the original sentence was inappropriate. This misstates the record. The court had before it all the evidence produced in both sentencing hearings, not mitigating evidence only; the expert testimony defendant presented was contested through cross-examination; and the court found the mitigating evidence not credible, which it was entitled to do. See infra, ¶ 17. This record supports the court's findings.

Constr. Co., 443 A.2d 478, 482 (Conn. 1982) (holding "[t]he credibility of expert witnesses and the weight to be accorded to their testimony are within the province of the trier of facts, who is privileged to adopt whatever testimony he [or she] reasonably believes to be credible" and not requiring factfinder to discredit expert's qualifications). The sentencing court must consider qualified expert testimony that is offered, but as with all other testimony, the discretion to credit the evidence lies with the factfinder. Cabot, 166 Vt. at 497, 697 A.2d at 652. Thus, we reject defendant's argument that the court abused its discretion by failing to find the expert testimony credible.

### III. Personal Animus Against Defendant

¶ 19. Lastly, defendant claims the trial judge's sentencing decision was driven by an impermissible personal animus against defendant. Defendant contends the sentencing judge required him to "battle" throughout the process and that she "prejudged" the case before the resentencing hearing. He bases this claim on the judge's remarks and decisions throughout the resentencing proceedings. Thus, some additional details about the remand proceedings will be helpful.

¶ 20. We remanded the case to the trial court in April 2017. The court promptly set the sentencing hearing for six weeks later. Because defendant's expert witness was not available on that date, defense counsel filed a motion to continue. According to defendant, he had already informed the judge that the expert witness was not available to testify on that date. The judge denied the motion, stating "[t]he sole basis for the remand . . . was to allow defendant to present a mitigation expert," and "[d]efendant is free to choose any such expert if the one he is consulting is not available."

¶ 21. Later, at a bail review hearing in May 2017, defendant requested to offer evidence at the resentencing hearing in addition to the mitigation expert's testimony, such as evidence regarding his good behavior in jail and his acceptance of responsibility. The judge refused, saying,

9

"[T]he resentencing is for the limited purpose of hearing from the mitigation expert. That's it. We're not doing the whole thing over again." Also at the May 2017 hearing, the judge predicted there were "four possible outcomes" of resentencing, which were: (1) the defense did not present an expert and there was no change to the sentence; (2) the mitigation expert presented evidence but there was no change to the sentence; (3) the mitigation expert presented evidence that mitigated the original sentence; and (4) the mitigation expert presented evidence that aggravated the prior sentence. In addressing whether it would be appropriate to release defendant pending the resentencing hearing, the court noted defendant had "received a sentence, and the likelihood of it being substantially reduced . . . to zero or time served is slim," so defendant knew "that receiving [an] incarcerative sentence is still a reality" and "there's not really any reason [for defendant] to stay in the community, pending a potential incarcerative sentence."

¶ 22. Subsequently, defendant filed a motion for reconsideration of the evidentiary limitations and a motion to disqualify the trial judge from presiding over the resentencing hearing. Referred to a different judge, the motion to disqualify was denied. The reviewing judge reasoned that although there may have been merit in defendant's contention that he was entitled to present additional evidence, the record of the trial court's denial did not "support an affirmative, and clear showing of bias or prejudice." The following day, the trial judge granted the motion for reconsideration, permitting defendant to present not only the expert witness testimony but also evidence of his actions after the initial sentencing to show he had accepted responsibility and begun rehabilitation.

¶ 23. A resentencing hearing was held in August 2017.[3] The court considered all the evidence submitted in the first sentencing hearing, additional testimony from defendant and defendant's expert witness, recorded statements from defendant's daughters, testimony from the

---

[3] The resentencing hearing was delayed from the initial June 2017 date due to the motion to disqualify.

victim's son, and additional documents associated with the expert witness's testimony. At the hearing's conclusion, the judge orally reviewed the facts and circumstances of the case, stated that she did not credit the expert witness's testimony or defendant's testimony, and concluded that the original sentence remained "fair, reasonable, and appropriate." She then reimposed the original sentence.

¶ 24. A judge may not base a sentencing decision, or any decisions related to the sentencing process, on personal animus or bias against a defendant, even if the sentence is otherwise valid. Ingerson, 2004 VT 36, ¶ 10 ("Reversal for resentencing is required if the defendant can show that the sentencing judge's decision was driven by personal bias or animus against the defendant."); see also United States v. Droge, 961 F.2d 1030, 1038 (2d Cir.1992) (stating that if judge had imposed sentence "out of personal spite and in retaliation," then "resentencing would be required"); United States v. Giraldo, 822 F.2d 205, 209 (2d Cir. 1987) ("A defendant has, of course, a due process right to a trial before a judge who has no actual or apparent bias."). Upholding a sentence driven by personal animus would "impair the integrity of the judicial process and tarnish its reputation for fairness." State v. Koons, 2011 VT 22, ¶ 16, 189 Vt. 285, 20 A.3d 662 (stating court cannot rely on "undisclosed acquitted conduct" in determining sentence without harming judicial integrity and fairness).

¶ 25. We recognize that the court's initial decision not to continue the resentencing hearing to provide for defendant's expert testimony was frustrating for defendant. A court should not unreasonably curtail a defendant's right to present mitigating evidence at sentencing, and we emphasized this in our remand decision. See Sullivan, 2017 VT 24, ¶ 53 (holding judge had exceeded her discretion in denying continuance, noting that court "was balancing, on the one hand, a two-month delay in holding the sentencing hearing against, on the other hand, defendant's best chance of mounting a potentially viable case in mitigation at sentencing"). But we cannot find that the trial judge's actions were such that "we would question [her] impartiality." Droge, 961

11

F.2d at 1039; cf. Luce v. Cushing, 2004 VT 117, ¶ 18, 177 Vt. 600, 868 A.2d 672 (mem.) (stating "standard for disqualification is whether the judge's impartiality might reasonably be questioned" and granting judge "presumption of honesty and integrity, with the burden on the moving party to show otherwise" (quotation and alterations omitted)); State v. Davis, 165 Vt. 240, 248, 683 A.2d 1, 6 (1996) (stating that in recusal motion "[w]e presume the integrity and honesty of judges, and the moving party has the burden to show otherwise").

¶ 26. We are guided here by State v. Ingerson, which resolved a similar claim that the court was motivated by personal bias. 2004 VT 36. The trial judge in that case had made comments during sentencing that the defendant found objectionable. Id. ¶ 9. After reviewing the record, we held that the context of the judge's comments indicated her "consideration of [the] defendant's character and propensities" and her "frustration with the defendant's recalcitrant criminality," rather than animus or bias. Id. ¶¶ 11-12. We noted that the sentence was "within statutory limits and was grounded explicitly on legitimate goals of criminal justice." Id. ¶ 13. We also observed that a "stinging public admonition" could further the goals of deterrence and rehabilitation. Id. Accordingly, we upheld the sentence. Id.

¶ 27. In this case, the record shows the trial judge's reluctance to allow evidence in addition to the expert testimony was due to her understanding of our instructions on remand, not due to any personal bias against defendant. The court said at the May 2017 hearing, "The remand was pretty clear on what we're doing, which is one thing only, which is the mitigation expert." When defense counsel disagreed, the judge again emphasized this Court's limited remand, quoting our mandate in Sullivan, 2017 VT 24: "[The mitigation expert] was the only issue raised in the appeal related to sentencing, and '[t]he sentence is vacated and the matter is remanded for resentencing to allow defendant sufficient opportunity to present mitigation testimony . . . .' That's it." Even assuming, without deciding, that the judge's interpretation of our mandate was

12

incorrect, it was not evidence of bias or animus. Cf. Ainsworth v. Chandler, 2014 VT 107, ¶ 16, 197 Vt. 541, 107 A.3d 905 (holding prior adverse rulings alone do not demonstrate bias).

¶ 28. Similarly, the trial judge's comments regarding the possibility of a different outcome after resentencing, when taken in context, do not persuade us that she prejudged the case. Her observation about the "four possible outcomes" arose during a discussion with the attorneys regarding whether this Court's remand required the judge to conduct a new sentencing hearing, including receiving new evidence, or whether it reopened the sentence only for the purpose of hearing from the mitigation expert. The judge understood this Court's remand to demand the latter, and she accordingly explained her view of the limited scope of the hearing and limited results.

¶ 29. In the same way, the judge's comment about the likelihood of a reduced sentence arose during a discussion about whether it would be appropriate to release defendant pending the resentencing hearing. The judge noted that defendant had "received a sentence, and the likelihood of it being substantially reduced . . . to zero or time served is slim," so defendant knew "that receiving an incarcerative sentence is still a reality" and "[t]here's not really any reason [for defendant] to stay in the community, pending a potential incarcerative sentence." The court's point was that if defendant believed it probable that he would be incarcerated again after the resentencing, then he had an incentive to leave town if he were released prior to resentencing. In this context, the court's comment was not evidence of prejudgment.[4]

---

[4] Defendant claims "the court's repeated refusal to consider the individual characteristics and mitigating circumstances and inherently contradictory findings established its personal bias against [him.]" We reject this characterization of the record. The court did consider defendant's individual characteristics at length, including discussing whether he had taken responsibility for and realized the impact of alcohol on his actions. The court's findings, while inconsistent with defendant's interpretation of the evidence, were not inherently contradictory. And the court's refusal to credit defendant's expert testimony was within its discretion and not evidence of animus.

¶ 30. Moreover, the judge ultimately did allow and consider the expert testimony and all the mitigation evidence defendant requested, and she imposed a sentence that was within the statutory limits. See Webster, 2017 VT 98, ¶¶ 44-47 (upholding court's "significant" minimum sentence, which was double the statutory mandatory minimum, based on facts and circumstances of case). The trial judge provided a detailed explanation for her sentencing decision, including that she found defendant and his witness not to be credible, and a reasoned basis for the sentence she imposed. The record shows the trial judge based her sentencing decision on proper factors, accurate information, and the legitimate goals of criminal justice. See Allen, 2010 VT 47, ¶ 14; Ingerson, 2004 VT 36, ¶ 13. There was no abuse of discretion.

Affirmed.

FOR THE COURT:

_____

Chief Justice